IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                        Civ. No. 06-933 RB/RHS

99,223.7238 ACRES OF LAND, MORE OR
LESS, IN SANDOVAL and RIO ARRIBA
COUNTIES, NEW MEXICO, and J.B.
HARRELL, JR., et al.,

      Defendants.

## REPORT AND RECOMMENDATIONS

**THIS MATTER** comes before the Court on the request of the respective parties for an

examination of prospective commissioners pursuant to Fed. R. Civ. P. 71(h)(2)(C).  The trial

court entered an Order of Reference (docket no. 138) which was filed on August 18, 2008, and

designated the undersign to conduct a hearing to determine if the parties have a basis to challenge

for cause the appointment of the proposed commissioners.  Thereafter, the undersigned is

directed to submit proposed findings of fact and recommendations for the disposition of issues

relating to challenges for cause, as provided by 28 U.S.C. §§ 636(b)(1)(A) and (B).

      Pursuant to the Order of Reference, a hearing was conducted on September 19, 2008, and

the parties appeared by and through their counsel of record.  With the consent of counsel and the

Court the prospective commissioners testified telephonically and each side was given the

opportunity to examine each proposed commissioner under oath to determine if there was any

basis to challenge for cause the appointment of that commissioner.  It was agreed that counsel

would provide the Court with their objections, if any, on or before September 24, 2008.  The United States has advised the Court that it does not object to Defendants' proposed Commissioner, C. Ronald Platt, or Defendants' proposed Alternate Commissioner, James W. Boyd (see letter attached hereto and incorporated by reference as Exhibit "A").  Defendants have objected to the appointment of Thomas V. Boyer as an Alternate Commissioner in this matter (see letter attached hereto and incorporated by reference as Exhibit "B").  Plaintiff's letter response to Defendants' objections are set forth in Exhibit "C" attached hereto and incorporated by reference.

After consideration of all of the pleadings on file in the above-captioned cause together with the testimony of Mr. Boyer, and the arguments and authorities submitted by counsel, the Court enters the following findings of fact:

1.  The parties agree and stipulate that the Honorable Leslie C. Smith shall serve as the Chairman of the commission.

2.  The parties have no objection to the Court appointing C. Ronald Platt as a Commissioner and that Mr. James W. Boyd serve as Mr. Platt's  Alternate Commissioner in this matter.

3.  The parties agree and stipulate that the Honorable Harold W. McKee be appointed as a Commissioner.

4.  The parties cannot agree on the appointment of Thomas V. Boyer as an Alternate Commissioner for Judge McKee.

5.  Defendants have no objection to Mr. Boyer's qualifications to serve as a Commissioner, however, are concerned that because Mr. Boyer has previously performed

approximately 20 appraisals for agencies within the United States Department of Agriculture and is presently in discussions with the Natural Resource Conservation Commission of the United States Department of Agriculture to perform another appraisal there could be an appearance of partiality.

6. Mr. Boyer clearly and unequivocally testified that he could be fair and impartial if nominated to serve as an Alternate Commissioner (the Court has attached the transcript of the proceeding as relates to Mr. Boyer hereto and incorporates it by reference as Exhibit "D").

7. Mr. Boyer can perform his duties as an Alternate Commissioner with fairness and impartiality to all parties and should be designated as an Alternate Commissioner to serve in place of Judge McKee.

<u>RECOMMENDATION</u>

It is respectfully recommended that the trial court deny Defendants' Objections and appoint Thomas V. Boyer as Alternate Commissioner for the Honorable Harold W. McKee.

Robert H. Scott     9-29-08

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

-3-



**U.S. Department of Justice**

Environment and Natural Resources Division

33-32-501-11295
*Land Acquisition Section*
*P. O. Box 561*
*Washington, DC 20044*

*Telephone (202) 305-0358*
*Facsimile (202) 305-0398*

September 24, 2008

RECEIVED AT THE OFFICE
OF THE U.S. MAGISTRATE JUDGE

SEP 2 4 2008

ROBERT HAYES SCOTT

**Via FAX**

Hon. Robert Hayes Scott
U.S. Magistrate Judge
United States District Court
333 Lomas Blvd. N.W., Suite 620
Albuquerque, New Mexico, 87102

Re:    **United States v. 99,223.7238 Acres of Land, More or Less, in Sandoval and
       Rio Arriba Counties, New Mexico, et al.
       Civ. No. 06-0933(D.N.M.)
       <u>Appointment of Commissioners</u>**

Dear Judge Scott,

    Per your request at the Court's hearing on September 19, 2008, the United States informs
the Court that it does not object to Defendants' proposed Commissioner, C. Ronald Platt, or
Defendants' proposed Alternate Commissioner, James W. Boyd.

    The parties previously agreed to have Judge Leslie C. Smith serve as the chairman of the
Commission.  Therefore, barring any objection from Defendants, the United States respectfully
requests that the Court appoint Judge Leslie C. Smith, Judge Harold W. McKee, and C. Ronald
Platt as Commissioners, and Thomas V. Boyer and James W. Boyd as Alternate Commissioners
in this matter.

                                        Sincerely,

                                        UNITED STATES OF AMERICA

                                        Kristin R. Muenzen
                                        Jeffrey M. Tapick
                                        Attorneys for Plaintiff

cc: via email
Mr. Drew Cloutier
Mr. James Hudson
Mr. Lucas Williams

EXHIBIT "A"

# HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.

Telephone: 575.622.6510                                    Facsimile: 575.623.9332

400 North Penn, Suite 700                                  Post Office Box 10
Roswell, NM 88201                                          Roswell, NM 88202

---

### Fax Cover Sheet

---

**September 24, 2008**

RECEIVED AT THE OFFICE
OF THE U.S. MAGISTRATE JUDGE

SEP 2 4 2008

ROBERT HAYES SCOTT

**Via Facsimile: 505.348.2305**
The Honorable Robert Hayes Scott
United States Magistrate Judge
United States District Court
333 Lomas Blvd. N.W, Suite 620
Albuquerque, New Mexico  87102

> Re:   *United States of America v. 99,223.7238 Acres of Land,*
> *More or Less, in Sandoval and Rio Arriba Counties, New*
> *Mexico, and J. B. Harrell, Jr., et al; U. S. D. C. Case No.*
> *CIV-06-0933*

FROM:    Andrew (Drew) J. Cloutier            acloutier@hinklelawfirm.com

MATTER:    0510361

_4_ Pages Including Cover Sheet.    Hard Copy Will Follow by Mail: ☒ Yes  ☐ No

IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL US BACK AS SOON AS POSSIBLE AT (505) 622-6510, Ext. 131

NOTES:

—   EXHIBIT "B"   —

---

*The information contained in this facsimile message is attorney/client privileged and confidential information intended*
*only for use by the individual or entity named above. If the reader of this message is not the intended recipient, or the*
*employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination,*
*distribution or copying of this communication is in error. If you have received this facsimile in error, please immediately*
*notify us by collect telephone call and return the original message to us at the above address via the U.S. Postal Service.*
HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.



hinklelawfirm.com

**HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.**

ATTORNEYS AT LAW

400 PENN PLAZA, SUITE 700

PO BOX 10

**ROSWELL, NEW MEXICO 88202**

575-622-6510   (FAX) 575-623-9332

WRITER;

James M. Hudson

jhudson@hinklelawfirm.com

September 24, 2008

**Via Facsimile:  505.348.2305**
**Via United States Postal Service**
The Honorable Robert Hayes Scott
United States Magistrate Judge
United States District Court
333 Lomas Blvd. N.W, Suite 620
Albuquerque, New Mexico  87102

Re:   *United States of America v. 99,223.7238 Acres of Land, More or Less,*
*in Sandoval and Rio Arriba Counties, New Mexico, and J. B. Harrell,*
*Jr., et al; U. S. D. C. Case No.  CIV-06-0933*

Dear Judge Scott:

As you requested at the September 19, 2008 Hearing in this matter, I am writing concerning the Commissioners suggested by the government in this matter.   First, Defendants join Plaintiff in requesting that Judge Leslie Smith be appointed to chair the Commission in this matter.  Second, Defendants request that the Court appoint Mr. Ronny Platt a Commissioner and that Mr. James Boyd be appointed as Mr. Platt's alternate. Third, Defendants do not object to the appointment of Judge Harold McKee, who was nominated by Plaintiff, as a Commissioner.

Based on certain facts that came up in the examination of Thomas Boyer, the alternate Commissioner proposed by Plaintiff, Defendants object to the appointment of Mr. Boyer as an alternate Commissioner.  Those facts are:

1.      Mr. Boyer previously performed about twenty appraisals for agencies within the United States Department of Agriculture; and

2.      Mr. Boyer is currently in discussions with the Natural Resource Conservation Commission of the United States Department of Agriculture to perform another appraisal.

Defendants are concerned that these facts, taken together, could create an appearance of partially.   But for the second fact, Defendants would not object to Mr. Boyer's appointment as an alternate Commissioner.

The Honorable Robert Hayes Scott
Re:   *United States of America v. J. B. Harrell, Jr., et al;*
      U. S. D. C. Case No. CIV-06-0933
September 24, 2008
Page 2 of 3


The Tenth Circuit recognizes that "in the context of selecting commissioners [under Rule 71.1] – the court's decision about whether implied bias exists should turn on an objective legal evaluation of the challenged commissioners' 'experiences and their relation to the case.'" *City of Stilwell, Oka. v. Ozarks Rural Electric Cooperative Corp.*, 166 F.3d 1064, 1069 (10th Cir. 1999). This objective approach to the selection of commissioners comports with other circuits' adoption of the 28 U.S.C. § 455(a) disqualification provisions in the context of Rule 71.1. *See, United States v. Werner*, 916 F.2d 175, 178-79 (4th Cir. 1990) (noting a split in the authority among circuit courts between a subjective rule of disqualification and the objective rule stated in § 455(a) and adopting the objective standard of disqualification). "[T]he inquiry under § 455(a) is 'whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.'" *Id.* (quoting *Rice v. McKenzie*, 581 F.2d 1114, 116 (4th Cir. 1978).

As we discussed at the Hearing, the agency of the United States government that condemned the subject mineral interest is the United States Department of Agriculture. *See* 16 USC §698v-1(7) ("the term 'Secretary' means the Secretary of Agriculture"). Mr. Boyer testified that he is in discussions with the Natural Resource Conservation Commission of the Department of Agriculture to perform another appraisal for them. If Mr. Boyer does an appraisal for any Department of Agriculture agency or discusses the prospect of future employment with any Department of Agriculture agency, we believe that he should not serve as a Commissioner in this matter as "another [person], not knowing whether or not [Mr. Boyer] is actually impartial, might reasonably question his impartiality on the basis of all the circumstances."

We did not locate a case "on all fours", but the *Werner* case cited above is instructive. In that case, where the United States condemned land for use as part of a national park, the Fourth Circuit held that a commissioner should have been disqualified by the district court where: (1) he, as the mayor of the town, "had secured funds from the National Park Service for various town projects;" (2) was attempting to get more funds for an additional project at the time of his appointment; (3) had previously made substantial donations to the National Park Service (a commemorative plaque and flag where erected in his honor); and (4) his possible animosity to one of the attorney's involved in the matter. *Werner*, 916 F.2d at 178-79. In Mr. Boyer's situation, there are facts analogous to the first and second facts noted by the *Werner* court are present. Indeed, Mr. Boyer has received and is in discussions to receive personal pecuniary benefit from the Department of Agriculture which does not appear to have been the case in *Werner*.

As Defendants do not object to Judge McKee, hopefully the issue of Mr. Boyer's ability to serve is academic. However, in the event that Judge McKee is unable to serve for any reason, Defendants do not believe that Mr. Boyer should serve as a Commissioner unless and until he can assure the Court that he is not (a) doing any work for an agency of

The Honorable Robert Hayes Scott
Re:     *United States of America v.  J. B. Harrell, Jr., et al;*
        U. S. D. C. Case No.  CIV-06-0933
September 24, 2008
Page 3 of 3

the Department of Agriculture; or, (b) discussing the prospect of future work with any such agency.

　　　Please let me know if you require anything further.

　　　　　　　　　Very truly yours,

　　　　　　　　　HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.

　　　　　　　　　James M. Hudson

JMH/s

xc via e-mail:     Jeffrey Tapick, Esq.
                   Kristin Muenzen, Esq.
                   Raymond Hamilton, Esq.
                   Clients



RECEIVED AT THE OFFICE
OF THE U.S. MAGISTRATE JUDGE

SEP 26 2008

ROBERT HAYES SCOTT

**IMPORTANT**: This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or it's contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the address given below.

**FROM:**   Jeffrey M. Tapick, Trial Attorney
Department of Justice
Environment and Natural Resources Division
Land Acquisition Section
P.O. Box 561
Ben Franklin Station
Washington, D.C.  20044

Phone No.   (202) 305-0297
Fax No.       (202) 305-0398

**TO:**   The Honorable Robert H. Scott
United States District Court for the District of New Mexico

**FAX No.:**   <u>(505) 348-2305</u>                    **PHONE:**

**NUMBER OF PAGES SENT (INCLUDING COVER PAGE): 4**

Re:   Land Commission in <u>United States v. 99,223.7238 Acres of Land and J.B. Harrell, Jr., et al.</u>, Civil No. CIV-06-0933 RCB/RHS (D.N.M.)

EXHIBIT "C"



**U.S. Department of Justice**

Environment and Natural Resources Division

33-32-501-11295
*Land Acquisition Section*                                              *Telephone (202) 305-0358*
*P. O. Box 561*                                                              *Facsimile (202) 305-0297*
*Washington, DC 20044*

                                                                                        September 26, 2008

**Via FAX**

Hon. Robert Hayes Scott
U.S. Magistrate Judge
United States District Court
333 Lomas Blvd. N.W., Suite 620
Albuquerque, New Mexico, 87102

        Re:    **United States v. 99,223.7238 Acres of Land, More or Less, in Sandoval and
                Rio Arriba Counties, New Mexico, et al., Civ. No. 06-0933(D.N.M.)
                <u>Appointment of Commissioners</u>**

Dear Judge Scott,

            We are writing in response to Defendants' objection to the appointment of Thomas Boyer
as the United States' proposed Alternate Commissioner in this matter. As discussed below,
Defendants' objection is entirely unfounded because it is based on an incomplete and misleading
recitation of Mr. Boyer's testimony, as well as an incorrect reading of Tenth Circuit law.

            First, Defendants' objection misconstrues Mr. Boyer's testimony regarding his current
pecuniary relationship with the United States. The crux of Defendants' objection is that Mr.
Boyer currently is in discussions "to receive personal pecuniary benefit" from the Natural
Resources Conservation Service ("NRCS"), an agency of the United States Department of
Agriculture ("USDA").[1] However, Mr. Boyer testified that as of this time, he has <u>not</u> been
retained to perform any appraisal work for NRCS, or any other USDA agency. Although Mr.
Boyer testified he has had recent discussions with the NRCS about possibly performing <u>future</u>
appraisal work regarding conservation easements, he expressly stated that it is unclear who
would be the client for such future work (i.e., whether the client would be NRCS, or
alternatively, the private landowner whose property would be encumbered by the easement).
Thus, it is erroneous for Defendants to claim that Mr. Boyer "is in discussions to receive personal
pecuniary benefit from the Department of Agriculture," because based on his testimony, it is
unknown whether he will, in fact, be retained by NRCS to perform any future appraisal work.

            Defendants' objection is further based on a misrepresentation of the law governing the
appointment of land commissioners in this case. In essence, Defendants argue that the Tenth
Circuit has applied the disqualification standards of 28 U.S.C. § 455 to land commissioners
appointed under Rule 71.1. However, the Tenth Circuit decision cited by Defendants is not
controlling, because it addressed land commissions appointed under Oklahoma state law, not
under Rule 71.1 (as Defendants erroneously claim). <u>See City of Stillwell v. Ozarks Rural Elec.
Coop. Corp.</u>, 166 F.3d 1064, 1069 (10th Cir. 1999) ("In conformity with the state law
procedures, the district court appointed three commissioners . . ."). Notably, there appear to be
no reported Tenth Circuit decisions addressing whether the disqualification standards of 28

_____

[1]In their objections, the Defendants have not cited the transcript from the September 19, 2008 hearing,
presumably because the transcript is not yet available. Accordingly, our statements concerning Mr.
Boyer's testimony are based on our handwritten notes from the hearing. If the Court determines that
further briefing on this issue is necessary, the United States will supplement this response with specific
citations to the hearing transcript once it is made available.

U.S.C. § 455 govern the appointment of land commissioners under Rule 71.1.[2]

Even assuming *arguendo* that 28 U.S.C. § 455 does apply in this case, the mere prospect that Mr. Boyer might be hired to do future appraisal work for a USDA agency does not disqualify him from serving as a land commissioner. The Seventh Circuit recently addressed this issue in a condemnation case filed by a pipeline company in which a land commission was appointed under Rule 71.1. See Guardian Pipeline, 525 F.3d 554. There, the landowner objected to an attorney serving as a commissioner because he had done work for other pipeline companies in the past, and thus might be inclined "to skew the commission's proceedings" in the hope of being hired again by such companies in the future. Id. at 555-57. The Seventh Circuit rejected this basis for disqualifying the prospective commissioner, finding that to accept this argument would mean that "no lawyer, appraiser, or engineer could serve on a commission, because it is always possible that whichever side prevails later could hire the person who made the decision." Id. at 558. As Judge Easterbrook observed in that decision, "Commissioners are supposed to bring expertise to [the] task, and they could not do so if the very knowledge and experience that made their views desirable also disqualified them." Id. at 556.

Here, similar to the facts in Guardian Pipeline, Defendants' objection is based solely on the testimony that (1) Mr. Boyer previously has performed approximately 20 appraisals (out of more than 500 in his career) on behalf of USDA agencies; and (2) at some time in the future, Mr. Boyer might be retained to perform appraisal work on behalf of other USDA agencies. Just as the Seventh Circuit reasoned that past employment and the prospect of future employment were insufficient grounds to disqualify a prospective commissioner, so, too, should this Court reject Defendants' arguments for disqualifying Mr. Boyer as an Alternate Commissioner.

Furthermore, the case on which Defendants rely to support their argument, United States v. Werner, 916 F.2d 175, 178-79 (4th Cir. 1990), is clearly and readily distinguishable. In that case, the Fourth Circuit applied the disqualification standards of § 455 and found that a mayor should have been disqualified from serving as a land commissioner because, among other things, at the time of his appointment he maintained an ongoing pecuniary relationship with the condemning agency to secure funding for town projects, and had himself made substantial financial donations to the agency. See Werner, 916 F.2d at 178-79. By stark contrast, Mr. Boyer does not presently have any pecuniary relationship with any USDA agency (or any other agency of the United States). Thus, Defendants' attempt to analogize Mr. Boyer to the disqualified mayor in Werner is both far-fetched and unavailing.

For the foregoing reasons, the United States respectfully requests that Defendants' objection to the appointment of Mr. Thomas Boyer as an Alternate Commissioner be overruled.

Sincerely,

UNITED STATES OF AMERICA

Jeffrey M. Tapick
Kristin R. Muenzen
Attorneys for Plaintiff

---

[2]However, Chief Judge Easterbrook of the Seventh Circuit recently observed that when the Supreme Court amended Rule 53(a)(2) in 2003 to expressly subject special masters to 28 U.S.C. § 455, the Court made no similar amendments to Rule 71.1, thereby indicating that commissioners were not subject to the disqualification provisions of § 455. See Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 525 F.3d 554, 556 (7th Cir. 2008). After noting that circuits previously had split on the issue of whether § 455 applies to land commissioners, Judge Easterbrook observed that "Since 2003, when the Civil Rules brought masters within § 455 while leaving commissioners out, no court has held that § 455 supplies the standards for members of commissions in condemnation proceedings."

cc: via email
Mr. Drew Cloutier
Mr. James Hudson
Mr. Lucas Williams

1

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4              Plaintiff,          CV-06-00933 RB/RHS

5   99,223.7238 Acres, et al.,

6              Defendant.

7

8       Transcript of Telephonic Hearing before THE HONORABLE

9   ROBERT HAYES SCOTT, United States Magistrate Judge, held in

10  Albuquerque, Bernalillo County, New Mexico, commencing on

11  Friday, September 19, 2008, at 9:55 a.m.

12

13               A P P E A R A N C E S

14  MR. JEFFREY M. TAPICK, U.S. DEPARTMENT OF JUSTICE

15  MS. KRISTIN R. MUENZEN, U.S. DEPARTMENT OF JUSTICE

16  MR. ANDREW CLOUTIER, HINKLE LAW FIRM

17  MR. JAMES M. HUDSON, HINKLE LAW FIRM

18

19

20

21

22  Reported by:

23

24      JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
        United States Court Reporter
        333 Lomas Boulevard, Northwest
25      Albuquerque, New Mexico  87102
        (505)348-2209


        JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
              333 Lomas Boulevard, Northwest
              Albuquerque, New Mexico  87102

        —        EXHIBIT "D"        —

1                        TELEPHONIC HEARING

2              THE COURT:  Hi, Mr. Boyer.

3              MR. THOMAS BOYER (Appearing Telephonically):

4    Howdy.

5              THE COURT:  Hello.  This is Judge Scott speaking,

6    and we're present in the United States District Courthouse

7    here in Albuquerque, New Mexico.  We're trying to figure

8    out what day and time it is where you're at.

9              MR. THOMAS BOYER:  Well, it's about 7:00 p.m. in

10   Kiev.

11             THE COURT:  September 20?

12             MR. THOMAS BOYER:  The 19th.

13             THE COURT:  Still the 19th?  Okay.  I apologize.

14   We are very confused here in Albuquerque.

15             MR. THOMAS BOYER:  I feel that way, myself.  It's

16   hard to keep track of all this.

17             THE COURT:  I bet it is.  I'm going to ask the

18   lawyers to go around and say "Hi" to you so that you can

19   put a voice with a name.  Our purpose this morning is for

20   the lawyers to ask you questions about your ability to

21   serve as an alternate commissioner in this lawsuit, which

22   is Case Number 06-0933.

23             Counsel, do you want to go around, please, and

24   introduce yourselves to him.

25             MR. ANDREW CLOUTIER:  Sure.  Mr. Boyer, my name

1    is Drew Cloutier.  I represent a number of the individual

2    defendants and the corporate defendant, Geo Products, in

3    this case.

4         MR. JAMES HUDSON:  And Mr. Boyer, my name is Jim

5    Hudson.  I'm with the Hinkle law firm, the same law firm as

6    Mr. Cloutier, representing the same client.

7         MS. KRISTIN MUENZEN:  Mr. Boyer, my name is

8    Kristen Muenzen.  I'm with the Department of Justice.

9         MR. JEFFREY TAPICK:  Good morning, Mr. Boyer.

10   This is Jeffrey Tapick from the Department of Justice.

11        THE COURT:  Mr. Boyer, this is Judge Scott again.

12   I'm going to place you under oath and then let the lawyers

13   ask you questions.

14        Do you swear or affirm your testimony will be the

15   truth under the penalty of perjury?

16        MR. THOMAS BOYER:  Yes.

17        THE COURT:  All right.  Counsel, you may proceed.

18        MR. ANDREW CLOUTIER:  Thank you.  Mr. Boyer, this

19   is Drew Cloutier again.  It shouldn't take very long, but I

20   need to ask you a few questions.

21        First of all, have you ever been to the property

22   that's now known as the Valles Caldera National Preserve

23   and was formerly known as the Baca Ranch?

24        MR. THOMAS BOYER:  No, I have not been.

25        MR. ANDREW CLOUTIER:  Have you ever visited

FORM C-100 · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

4

1    northern New Mexico?

2              MR. THOMAS BOYER:  Yes, I have.

3              MR. ANDREW CLOUTIER:  What areas have you been

4    in?

5              MR. THOMAS BOYER:  I've been in the Santa Fe area

6    and in Taos.  You know, I don't recall exactly all of --

7    you know, any specific areas.  It's been a few years since

8    I have been in that area, but I have been in that area in a

9    general kind of a way.

10             MR. ANDREW CLOUTIER:  Okay.  Before you were

11   contacted about this case and serving as a commissioner,

12   did you have any knowledge of the property that's now known

13   as the Valles Caldera National Preserve, but was formerly

14   called the Baca Ranch?

15             MR. THOMAS BOYER:  No, I have not heard of that

16   ranch before.

17             MR. ANDREW CLOUTIER:  Okay.  And have you

18   acquired any knowledge about that property or ranch since

19   you were contacted about this case?

20             MR. THOMAS BOYER:  No.  No, nothing.

21             MR. ANDREW CLOUTIER:  Has your career been spent

22   as an appraiser exclusively?

23             MR. THOMAS BOYER:  No, it has not.  I also do

24   farm management and agricultural consulting.

25             MR. ANDREW CLOUTIER:  Have you had any

FORM C-100 · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1     professional experience with geothermal types of resources?

2            MR. THOMAS BOYER:  I've had some, as there has

3     been some of those present on farms and ranches that I have

4     appraised in previous years, but I have not had extensive

5     in-depth kinds of -- you know, a lot of that kind of

6     specific resources that I've appraised.

7            Like I say, they have been on the ranches and the

8     properties that I've appraised, but I've never been

9     specifically assigned to appraise a specific resource

10    pertaining to geothermal.

11           MR. ANDREW CLOUTIER:  So in doing appraisals of

12    farms and ranches where geothermal resources may have been

13    present, you personally did not assign any value to those

14    resources.  Am I understanding you correctly?

15           MR. THOMAS BOYER:  No, I wouldn't say that.  Yes,

16    they were part of the assets that we valued, but they were

17    not the only assets that were valued, is a better way to

18    state that.  There were obviously grazing and other crop

19    assets on the various properties, and this was just one of

20    the assets that was part of the whole package.

21           MR. ANDREW CLOUTIER:  Okay.

22           MR. THOMAS BOYER:  One of the property rights.

23           MR. ANDREW CLOUTIER:  How did you go about

24    valuing the geothermal resources on those properties?

25           MR. THOMAS BOYER:  In a couple of cases -- and

6

1    again, I wasn't aware this was being part of the discussion

2    so I was not thinking about this particularly.  But in one,

3    there was opportunity for some vegetable growing facilities

4    to be put on the operation, which would provide a better

5    income, and that would all lead to the geothermal assets

6    that were there, that would provide opportunity for that to

7    happen, which otherwise it wouldn't have been.

8            So they were included in that scope of the

9    valuation.

10           In some other cases, they were not given value.

11   There was no opportunity for them to add any value over the

12   land as it was currently being used in the agricultural

13   production.

14           MR. ANDREW CLOUTIER:  Okay.  And other than the

15   geothermal resources that we have spoken of, have you ever

16   valued undeveloped minerals by themselves?

17           MR. THOMAS BOYER:  No, I have not.

18           MR. ANDREW CLOUTIER:  Okay.  And I take it in

19   appraising farms and ranches, you have occasionally had to

20   assign value or consider the possibility of value of

21   undeveloped minerals?

22           MR. THOMAS BOYER:  Yes, I have.  I have not done

23   -- when I said "No" to the previous question, I have not

24   done specific exclusive mineral appraisals where that was

25   the only scope of value that I was dealing with.

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1          I have done several of them or numerous of them

2    where they have been part of the larger parcel, but not

3    exclusive mineral.

4          MR. ANDREW CLOUTIER:  Good.  Thank you for the

5    clarification.  You understood my questions perfectly

6    there, because that's exactly what I was getting at.  Do

7    you have any opinions as to whether or not comparable sales

8    analysis is an appropriate way to value undeveloped

9    minerals?

10         MR. THOMAS BOYER:  Well, always we try to look at

11   or I always try to look at all three approaches when

12   valuing anything, and so the comparable sales is one of the

13   approaches that I would look at and determine the

14   applicability in valuing the resources any time I do an

15   appraisal.

16         So yes, I would take a look at that as being a

17   possible approach to value that may be considered in the

18   final opinion of value.

19         MR. ANDREW CLOUTIER:  What are the other two ways

20   of valuing that you would consider?

21         MR. THOMAS BOYER:  Cost approach and income

22   approach.

23         MR. ANDREW CLOUTIER:  Okay.  And I take it, from

24   your immediately previous answer to the last one, that it

25   would depend upon the facts and circumstances of the case

JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
333 Lomas Boulevard, Northwest
Albuquerque, New Mexico  87102

FORM C-100 · LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1    or particular property as to which of those three

2    approaches or what sort of blend between those three

3    approaches would be appropriate for a particular set of

4    undeveloped minerals.  Am I understanding that correctly?

5              MR. THOMAS BOYER:  Yes, that is correct.

6              MR. ANDREW CLOUTIER:  Okay.  Have you ever

7    testified in court about the valuation of minerals?

8              MR. THOMAS BOYER:  Not specifically, no.

9              MR. ANDREW CLOUTIER:  And by "not specifically"

10   are you indicating to me that there are cases that you have

11   testified in where minerals were part of the property, but

12   you weren't focusing your testimony on the mineral value?

13             MR. THOMAS BOYER:  That's correct.

14             MR. ANDREW CLOUTIER:  Okay.  Anything else by the

15   "not specifically" that I was missing?

16             MR. THOMAS BOYER:  No.  No, that was what I

17   intended to convey.  Perhaps I should have explained that,

18   that I have testified in court cases about value of

19   property, but the value included more than just mineral

20   rights.  They included surface rights and other rights, as

21   well.

22             MR. ANDREW CLOUTIER:  Okay.  And you belong to

23   the American Society of Farm Managers and Rural Appraisers;

24   is that correct?

25             MR. THOMAS BOYER:  That is correct.


                JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
                      333 Lomas Boulevard, Northwest
                       Albuquerque, New Mexico  87102

9

1       MR. ANDREW CLOUTIER:  Okay.  Have you ever taken
2   course AS-340?
3       MR. THOMAS BOYER:  Refresh my mind on what course
4   that is.
5       MR. ANDREW CLOUTIER:  It's a mineral valuation
6   course.
7       MR. THOMAS BOYER:  No, I have not.
8       MR. ANDREW CLOUTIER:  Okay.  Have you ever done
9   any appraisals for the United States Government?
10      MR. THOMAS BOYER:  Yes, I have.
11      MR. ANDREW CLOUTIER:  Would you describe those
12  for me, please.
13      MR. THOMAS BOYER:  I'm trying to think of what
14  they all would include, but the majority of them would have
15  been for the Natural Resource Conservation Service or for
16  the Farm Service Agency.  I believe I have done some
17  valuation work for the Bureau of Indian Affairs, as well.
18      MR. ANDREW CLOUTIER:  And are you currently doing
19  any work for the United States Government?
20      MR. THOMAS BOYER:  No.  No.
21      MR. ANDREW CLOUTIER:  When was the last time you
22  worked doing an appraisal for the United States Government?
23      MR. THOMAS BOYER:  A year ago, in 2007.
24      MR. ANDREW CLOUTIER:  Over time -- and if you
25  need to give me an estimate, that's fine; just tell me.

1    But over your career, how many appraisals have you done for

2    United States Government agencies?

3            MR. THOMAS BOYER:  Probably -- golly.  I would

4    guess 20 as a rough estimate.

5            MR. ANDREW CLOUTIER:  Okay.  Have you ever been

6    hired by a mineral developer or to do an appraisal for

7    minerals?

8            MR. THOMAS BOYER:  No.

9            MR. ANDREW CLOUTIER:  Do you have any prospect of

10   doing any future appraisal work for the United States

11   Government?

12           MR. THOMAS BOYER:  I have been recently asked to

13   do a conservation easement appraisal that could possibly --

14   probably it would likely involve the NRCS.

15           MR. ANDREW CLOUTIER:  Okay.

16           MR. THOMAS BOYER:  I don't know if they would be

17   the client or not.  They were trying to decide who would be

18   the client, if it would be NRCS or exactly who would be

19   contracting that appraisal.  But that's a potential.

20   That's the only one that I have even out there that I'm

21   aware of.

22           MR. ANDREW CLOUTIER:  Okay.  And what department

23   is the Natural Resource Conservation Service, or NRCS,

24   under?

25           MR. THOMAS BOYER:  Agriculture.  The Department

FORM C-100 - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1    of Agriculture.

2           MR. ANDREW CLOUTIER:  Would the fact that the

3    United States is a party in this case affect your ability

4    to be impartial as to all the evidence and all the parties

5    in the case?

6           MR. THOMAS BOYER:  I certainly don't believe so.

7    I never would hope that would be the case.

8           MR. ANDREW CLOUTIER:  Okay.  Just one second.

9    Have you ever done any appraisals in New Mexico, Mr. Boyer?

10           MR. THOMAS BOYER:  No, I have not.

11           MR. ANDREW CLOUTIER:  Okay.  That's all the

12    questions I've got for you at this time.  I really

13    appreciate you making yourself available from such a

14    far-flung location to us today.

15           THE COURT:  Do plaintiffs have any questions?

16           MR. JEFFREY TAPICK:  Good morning, Mr. Boyer.

17    This is Jeffrey Tapick again.  I just have a quick question

18    or two for you, Mr. Boyer, regarding your prior employment

19    by the United States.  Mr. Boyer, have you ever been

20    retained by the Department of Justice to do any appraisal

21    work?

22           MR. THOMAS BOYER:  No.

23           MR. JEFFREY TAPICK:  Have you ever been retained

24    by the United States in any condemnation matter?

25           MR. THOMAS BOYER:  No.


                    JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
                           333 Lomas Boulevard, Northwest
                           Albuquerque, New Mexico  87102

FORM C-100 · LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1          MR. JEFFREY TAPICK:  And have you had any

2    experience as an appraiser in condemnation or eminent

3    domain cases?

4          MR. THOMAS BOYER:  Some with the State of Utah.

5    That was on highway condemnation, highway right-of-way,

6    taking lands from individual property owners and going into

7    highway for the State Department of Transportation.

8          MR. JEFFREY TAPICK:  And is that the only

9    condemnation or eminent domain experience you have had in

10   your professional experience?

11         MR. THOMAS BOYER:  Yes.

12         MR. JEFFREY TAPICK:  That's all.  No further

13   questions.

14         THE COURT:  All right.  Thank you, Mr. Boyer.

15   This is Judge Scott.  If you would just please hang on for

16   a couple more minutes.  Counsel, do you have any objections

17   or concerns you want to raise at this time that could be

18   addressed or cured while he's here to testify?

19         MR. ANDREW CLOUTIER:  Your Honor, I have got to

20   visit with my clients, so I can't say.  The Department of

21   Agriculture is Mr. Tapick's client, if you will, in this

22   matter, so it's a little bit of a concern here.

23         I'm not really sure I want to raise it, but -- I

24   mean, if there's any follow-up questions you've got of

25   Mr. Boyer or Mr. Tapick -- I mean, he has done quite a bit

1    of work for, if you will, Mr. Tapick's client, while he

2    hasn't done work for the Department of Agriculture, and so

3    that's something of a concern.

4           THE COURT:  All right.

5           MR. ANDREW CLOUTIER:  I don't know whether we're

6    going to raise it as an objection, but I think it's at

7    least a possibility here, and I don't want to suggest

8    otherwise.

9           MR. JEFFREY TAPICK:  Is the objection about his

10   being potentially retained for ongoing work, or for that

11   conservation easement work that he discussed?

12          MR. ANDREW CLOUTIER:  It seems like he does a lot

13   of work over time or not an insubstantial number of work

14   for the Department of Agriculture, and that at least gives

15   -- personally talking to Mr. Boyer, I don't detect it's a

16   problem, but it does give an appearance issue, it strikes

17   me as.

18          MR. JEFFREY TAPICK:  A few follow-up questions we

19   might ask.

20          THE COURT:  Mr. Boyer, this is Judge Scott again.

21   I've listened carefully to your testimony, and I understand

22   that you've worked for the government on maybe 20 prior

23   occasions and you've got one more possibility coming up in

24   the future.  Is that a fair assessment of your history of

25   employment with the government, doing appraisals?

FORM C-100 - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

14

1    MR. THOMAS BOYER:  Yes.  Yes, sir.

2    THE COURT:  All right.  And I don't say this in

3    any attempt to be humorous or anything else, but I think

4    cutting to the bottom line, the concern is that everyone

5    wants to make sure that you can be fair and impartial and

6    that your opinions are not what sometimes you hear in the

7    hallways of the courthouse when they refer to MAI

8    appraisals as being "Made According to Instructions."

9    They just want to be sure that you can be fair

10   and you can be impartial and you can set aside your

11   previous contractual employment experiences, as well as the

12   possibility that you may have other business, and serve as

13   a fair and an impartial commissioner under Judge Brack's

14   supervision.

15   Do you believe you can do that?

16   MR. THOMAS BOYER:  Yes, sir.  My professional

17   reputation is on the line to do that, and to be fair

18   regardless who I'm working for.  And I would do my very

19   best to be impartial and be very straightforward and honest

20   in my valuations if they were to be passed along, if I were

21   part of the case.

22   THE COURT:  Thank you, sir.  I appreciate your

23   candor, and please understand I'm not asking that in any

24   way to challenge you.  I just want to make sure that you

25   don't have any hesitation in that belief.

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6513

15

1              Counsel, do you want to ask any further questions
2    based on my inquiry?
3              MR. ANDREW CLOUTIER:  I just want to add,
4    Mr. Boyer, I've raised the issue -- I mean, appearance of
5    impropriety is not a personal challenge to you, but it's a
6    question of:  How does it look to a newspaper reporter
7    splashing it across the front page of the newspaper?
8              And it's sort of the test that I do, and I
9    represent a number of individual clients, and I just have
10   to talk to them about it, and I'm being candid with the
11   judge and with my opposing counsel and you, so that you
12   know what it is.  But it's not a challenge to your personal
13   ethics, but just a question of how things appear.
14             MR. THOMAS BOYER:  I understand.
15             THE COURT:  Mr. Tapick?
16             MR. JEFFREY TAPICK:  Mr. Boyer, just a couple
17   more questions.  I know you're sitting somewhere away from
18   your office and you may not have thought about this, but
19   could you give us a rough sense of how many appraisals
20   you've done in the course of your professional career?
21             MR. THOMAS BOYER:  Oh, wow.  I started in 1980
22   and have been appraising continuously since that time.  I
23   probably have done -- I don't know -- I would guess an
24   average of two appraisals, maybe slightly less than that,
25   one and one-half or one and three-quarters appraisals a

JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
333 Lomas Boulevard, Northwest
Albuquerque, New Mexico  87102

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1   month during that time period.  That's kind of what it

2   seems to average, but that would give you an indication.

3           MR. JEFFREY TAPICK:  Would you say it's fair that

4   you have done in excess of 500 appraisals in your

5   professional career?

6           MR. THOMAS BOYER:  Yes.

7           MR. JEFFREY TAPICK:  Okay.  And of those, you say

8   roughly 20 have been for the United States Government or

9   one of its agencies?

10          MR. THOMAS BOYER:  Yes.

11          MR. JEFFREY TAPICK:  Okay.  Can you give us a

12  sense of how much of your -- what percentage of your income

13  on a yearly basis comes from work you do on behalf of the

14  United States or one of its agencies?

15          MR. THOMAS BOYER:  Well, maybe I should explain

16  how the majority of those came about.  I worked -- I took a

17  contract with Farm Service Agency, and I don't recall the

18  year, but it would have been in the early 1990s, like 1992

19  somewhere, 1993, as I recall, as I'm best able to recall

20  here, again being away from the office.

21          But the majority of those appraisals were done

22  for the Farm Service Agency in that one contract, and they

23  were all pertaining to farms that were experiencing

24  financial problems with that entity, with the Farm Service

25  Agency, and so I was called in to do a valuation on those

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1    farms.

2            So the majority of that work would have happened

3    in that time period.  I couldn't tell you what that

4    contract was today, but the majority of it happened then.

5            Since that time, the only appraisal work I've

6    done with them was, I've done a couple, two or three

7    conservation easement appraisals in this last decade, at

8    the turn of the century here in 2000, the most recent being

9    just a year ago when I did one in eastern Utah on a large

10   farm; and again, it was for the NRCS.

11           And so that one, you know, the percentage of

12   income would be very small overall, because I've only done

13   two or three appraisals in the last decade for them, and

14   those were conservation easement appraisals which would

15   have amounted to, you know, perhaps -- I don't know -- I

16   would guess 10 percent of my annual income in the years

17   they happened, and that would have been in, as I best am

18   recalling, about three different years.

19           Does that help explain that?

20           MR. JEFFREY TAPICK:  Yes, Mr. Boyer.  One or two

21   follow-up questions.  Does that mean that the majority of

22   your clients or the majority of the appraisals that you do

23   prepare are done on behalf of private land owners?

24           MR. THOMAS BOYER:  Or banks.  I do some appraisal

25   work for banks or private land owners which make up the

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800 626-6313

1    rest of that.

2          MR. JEFFREY TAPICK:  Judge, I think that's all we

3    have.

4          THE COURT:  All right.  Anything else?

5          MR. ANDREW CLOUTIER:  No, thank you.

6          THE COURT:  Thank you, Mr. Boyer.  This is Judge

7    Scott again.  We're going to let you get off the telephone.

8    There is a process by which the lawyers have several days

9    to file any formal challenges.  We'll go through that

10   process, and then either my chambers or Judge Brack or the

11   attorneys will notify you as to the result.

12         Again, I appreciate you being available so many

13   time zones away from us.  Thank you.  You are released for

14   today.  We won't be calling you back.

15         MR. THOMAS BOYER:  Thank you.

16         THE COURT:  All right, sir.

17         MS. KRISTIN MUENZEN:  Thank you.

18         THE COURT:  The record will reflect we have now

19   terminated the telephone call with Mr. Boyer.

20         We'll be in recess.

21         MR. JEFFREY TAPICK:  Thank you, Your Honor.

22         (Proceedings concluded at 10:20 a.m.)

23

24

25

              JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
                     333 Lomas Boulevard, Northwest
                     Albuquerque, New Mexico  87102

1    UNITED STATES OF AMERICA

2    DISTRICT OF NEW MEXICO

3

4                    REPORTER'S CERTIFICATE

5             I, Julie Goehl Sanchez, RDR, CRR, RMR, New

6    Mexico CSR, Official Court Reporter for the United States

7    of America, do hereby certify that I did report in

8    stenographic shorthand the proceedings set forth herein,

9    and that the foregoing constitutes a true and correct

10   transcription of the proceedings.

11            In testimony whereof, I have hereunto set my

12   hand on this 29th day of September, 2008.

13

14   _____

15

16            JULIE GOEHL SANCHEZ
             Registered Diplomate Reporter
17           Registered Merit Reporter
             Certified Realtime Reporter
18           NM Certified Court Reporter #95
             333 Lomas Boulevard, Northwest
19           Albuquerque, New Mexico  87102
             Phone:  (505)348-2209
20           Fax:    (505)348-2215

21

22

23

24

25

JULIE GOEHL SANCHEZ, RDR, CRR, RMR, NM CCR #95
            333 Lomas Boulevard, Northwest
            Albuquerque, New Mexico  87102