IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,             ) | |
|                                        ) | |
|            **Plaintiff,**              ) | |
| vs.                                    ) | No. CIV 06-0933 RB/RHS |
|                                        ) | |
| 99,223.7238 ACRES OF LAND, more or less, in  ) | |
| SANDOVAL and RIO ARRIBA COUNTIES,      ) | |
| NEW MEXICO, and J.B. HARRELL, JR., et al.  ) | |
|                                        ) | |
|            **Defendants.**             ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Motion and Memorandum to Exclude Defendants' Highest and Best Use, or Alternatively, to Hold a Pretrial Hearing to Screen the Proffered Evidence (Doc. 89); Plaintiff's Motion and Memorandum to Exclude the Valuation Testimony of Defendants' Appraiser Mitchell Albert (Doc. 87), both filed on April 15, 2008; and Defendants' Opposed Second Motion for Preliminary Legal Determinations (Doc. 78), filed on April 14, 2008. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions, applicable law, and being otherwise fully advised, I hereby deny these motions.

**I.    Background.**

This condemnation action concerns the undivided mineral estate beneath the Valles Caldera National Preserve (herein "Preserve"), formerly known as the Baca Ranch, located in New Mexico's Jemez Mountains and surrounded by the Santa Fe National Forest. The Preserve accounts for "most of the Valles Caldera," a "large resurgent lava dome with potential geothermal activity." 16 U.S.C. § 698v(a)(1)-(2). Prior to the date of the taking at issue here, the government owned 100% of the Preserve's surface estate and 87.5% of the underlying undivided mineral subsurface estate.

On July 25, 2000, the Valles Caldera Preservation Act ("VCPA" or "the Act") became law. 146 Cong. Rec. D834-01 (daily ed. July 26, 2000). The Act authorized Plaintiff ("United States of America") to acquire, on a "willing seller basis," "all or part of the rights, title, and interest in and to approximately 94,761 acres of the Baca ranch." 16 U.S.C. § 698v-2(a)(1), (a)(3)(A) (2000). The Act expressly provided that the Preserve was a unit of the National Forest System. 16 U.S.C. §§ 698v-3, 698v-6(f). The VCPA's stated purposes include "protect[ing] and preserv[ing] the scientific, scenic, geologic, watershed, fish, wildlife, historic, cultural, and recreational values of the Preserve," and "provid[ing] for multiple use and sustained yield of renewable resources within the Preserve." *Id*. § 698v-3(b).

Under the VCPA, the Valles Caldera Trust ("the Trust") - created as a government corporation - and the Secretary of Agriculture are vested with responsibility for managing the Preserve and its resources. *Id*. §§ 698v-4–698v-6. The VCPA made clear that:

> The acquisition of the Baca ranch by the Secretary shall be *subject to* all outstanding valid existing mineral interests. The Secretary is authorized and directed to negotiate with the owners of any fractional interest in the subsurface estate for the acquisition of such fractional interest on a willing seller basis for not to exceed its fair market value, as determined by appraisal done in conformity with the Uniform Appraisal Standards for Federal Land Acquisitions . . . .

16 U.S.C. § 698v-2(e) (2000) (emphasis added).

In December 2005, the VCPA was amended. Pub. L. 109-132, Dec. 20, 2005, 119 Stat. 2570. In applicable part, the amendments authorized Plaintiff to exercise eminent domain over the outstanding mineral interests if "negotiations to acquire the interests [we]re unsuccessful by the date that is 60 days after December 20, 2005." 16 U.S.C. § 698v-2(e)(5) (2005); *compare* Pub. L. 106-248, Title I, § 104(e), July 25, 2000, 114 Stat. 600, *with* Pub. L. 109-132, § 2(a), Dec. 20, 2005, 119 Stat. 2570. After a negotiated sale failed to materialize within the statutorily mandated period,

the government exercised eminent domain authority over the outstanding 12.5% minority mineral interests. The stipulated date of taking is May 21, 2006. (Doc. 24.)

On October 2, 2006, Plaintiff filed the underlying Complaint for Condemnation. (Doc. 1.) At that time, Plaintiff deposited $700,000.00 - the amount it claims constitutes "just compensation" for Defendants' property - with the Clerk of Court. (*Id.*)

On June 19, 2008, in accordance with the agreement reached by the parties at a June 3, 2008 settlement conference before the Honorable Robert H. Scott, United States Magistrate Judge, the Court approved the parties' Stipulated Order for Referral to Land Commission, (Doc. 128), pursuant to Fed. R. Civ. P. 71.1 (h)(2)(A). The parties subsequently stipulated as to Issues Nos. 2, 3(b) (c) (d) (e), and 5 raised in Defendants' Opposed Second Motion for Preliminary Legal Determinations and withdrew certain motions.

After the Court advised the parties of the identity and qualifications of each prospective commissioner and alternate, the parties requested an opportunity to examine them pursuant to Fed. R. Civ. P. 71(h)(2)(C). (Doc. 138.) Defendants lodged objections to the appointment of Thomas V. Boyer as Alternate Commissioner for the Honorable Harold W. McKee, United States Magistrate Judge. The request for examination of prospective commissioners matter was referred to Judge Scott, who held an evidentiary hearing on September 19, 2008. (Docs. 144.) On September 29, 2008, Judge Scott issued a Report and Recommendation that this Court deny Defendants' objections.

**II.    Standard.**

Federal condemnation proceedings are "governed by Fed. R. Civ. P. 71A." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 3-4 (1984). Pursuant to Rule 71A, "except for the single issue of just compensation, the trial judge decides all issues, legal and factual, that may be

3

presented." *United States v. Reynolds*, 397 U.S. 14, 19-20 (1970) ("the sweeping language of [Rule 71A(h)'s] final sentence . . . discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial"); *United States v. Hardage*, 58 F.3d 569, 576 (10th Cir. 1995) ("[a]ny party to a condemnation proceeding is ordinarily entitled to a jury trial to fix the value of the property taken where demand is made as provided in Rule 71A(h)" (citations omitted)).  On this basis, this Court is authorized to entertain, and rule on, the issues presented by the parties.  *See United States v. Land, 62.50 Acres of Land*, 953 F.2d 886, 893 (5th Cir. 1992).

**II.     Discussion.**

    **A.     Plaintiff's Motion to Exclude Defendants' Evidence of Highest and Best Use.**

Plaintiff contends that the Court should exclude evidence of the proposed use of geothermal development because it is overly speculative and, therefore, cannot form the basis of just compensation.

The Fifth Amendment requires Plaintiff to pay "just compensation" for "taking" Defendants' "private property."  U.S. Const. amend. V.  The burden of proof is on the landowner to prove by a preponderance of the evidence the amount of just compensation to which it claims it is entitled.  *Bd. of County Supervisors v. United States*, 116 F.3d 454, 457 (Fed. Cir. 1997); *United States v. L.E. Cooke Co.*, 991 F.2d 336, 341 (6th Cir. 1993); *Wilson v. United States*, 350 F.2d 901, 908 (10th Cir. 1965).

As just compensation for the condemnation of their property, Defendants are entitled to the value that the property would have commanded in the open market at the time of the taking in light of the highest and most profitable use to which the property might reasonably have been devoted in the near future. *See Olson v. United States*, 292 U.S. 246, 255 (1934).  In *Olson*, the Supreme

Court stated that the owner is to receive:

> the market value of the property at the time of the taking contemporaneously paid in money. . . . Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined . . . . The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.

*Id.* (citations omitted); *see also McCandless v. United States*, 298 U.S. 342, 345-46 (1936) ("The rule is well settled that, in condemnation cases, the most profitable use to which the land can probably be put in the reasonably near future may be shown and considered as bearing upon the market value.").

" 'The best evidence of market value of real property in condemnation is, of course, found in sales of comparable land within a reasonable time before the taking.' " *United States v. 819.98 Acres of Land*, 78 F.3d 1468, 1471 (10th Cir. 1996) (quoting *United States v. 179.26 Acres of Land*, 644 F.2d 367, 371 (10th Cir. 1981); accord *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 641 (10th Cir. 1988); *United States v. 2,560.00 Acres of Land*, 836 F.2d 498, 502 n. 2 (10th Cir. 1988); *United States v. 25.02 Acres of Land*, 495 F.2d 1398, 1400 (10th Cir. 1974).

> Although comparable sales offer the "best evidence of market value," we have observed "that the law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation." *Sill Corp. v. United States*, 343 F.2d 411, 416 (10th Cir.), *cert. denied*, 382 U.S. 840 (1965). Thus, in the absence of comparable sales, other methods of valuation-such as the capitalized income approach-may be appropriate to determine the market value of condemned property. *2,560.00 Acres of Land*, 836 F.2d at 504; *179.26 Acres of Land*, 644 F.2d at 372.

*United States v. 819.98 Acres of Land*, 78 F.3d at 1471.

Potential uses of the property may constitute the "highest and most profitable use." *2,560.00 Acres of Land*, 836 F.2d at 503-04. A potential use will only be considered in the fair market value

5

calculus, however, if - on the date of taking - the potential use was "reasonably probable in the reasonably near future." *See United States v. Consol. Mayflower Mines, Inc.*, 60 F.3d 1470, 1476, 1479 (10th Cir. 1995). Thus, a proposed "use" requires a showing of reasonable probability that, at the time of the taking, the land was both physically adaptable for such use and that there was a need or demand for such use in the reasonably near future. *See United States v. 341.45 Acres of Land*, 633 F.2d 108, 111 (8th Cir. 1980).

Federal regulatory jurisdiction over potential use of the condemned property can decrease the fair market value that the government must pay. *United States v. 2,175.86 Acres of Land*, 687 F. Supp. 1079 (E.D. Tex. 1988). *See also United States v. 62.50 Acres of Land*, 953 F.2d 886 (5th Cir. 1992) (fair market value does not include a potential future use which would require federal and state clearance because permission probably would be denied). While the imminence of governmental regulation may decrease the value of the property, the existence of regulatory hurdles does not render the evidence of a potential use inadmissible.

The Tenth Circuit has recognized that speculation is inherent in the ascertainment of value of all resource property. *See United States v. Silver Queen Mining Company*, 285 F.2d 506, 510 (10th Cir. 1960). In *Consolidated Mayflower,* the Tenth Circuit read *Olson* in conjunction with *Montana Railway Co. v. Warren*, 137 U.S. 348, 353 (1890), and held that a landowner whose property has access to undeveloped minerals must prove that extraction of the minerals is the highest and best use of the land and that extraction would have been reasonably probable in the reasonably near future. *See Consol. Mayflower*, 60 F.3d at 1476-79. Absent such proof, fair market value does not include the value of the minerals. However, *Consolidated Mayflower* involved appellate review of jury instructions, not rulings on the admissibility of evidence. This distinction is crucial.

Plaintiff's arguments against admissibility of evidence of highest and best use center on

factual issues relating to whether development of the geothermal resource is reasonably probable in the reasonably near future. "Courts have historically recognized that even though there is necessarily some element of speculation and uncertainty in expert testimony relative to 'in place' mineral reserves, still it is the best testimony of value." *179.26 Acres of Land*, 644 F.2d at 372. Notably, the Tenth Circuit has repeatedly endorsed the concept that highest and best use should be determined by the fact finder. *Consol. Mayflower*, 60 F.3d at 1475-77 (holding that the jury instruction given on how to determine highest and best use was correct); *179.26 Acres*, 644 F.2d at 368 (upholding fact finder's determination that highest and best use included value of undeveloped limestone); and *494.10 Acres*, 592 F.2d at 1132-33 (affirming the fact finder's determination that highest and best use did not include sand and gravel mining was not clearly erroneous).

In light of the uncertainty surrounding the value of the property at issue, the best method for valuation of the geothermal resource is for the commission to weigh expert testimony. Accordingly, the Government's Motion to Exclude Defendants' Evidence of Highest and Best Use will be denied.

**B.     Plaintiff's Motion to Exclude the Valuation Testimony of Mitchell Albert.**

Plaintiff asserts the Court should exclude Dr. Albert's valuation testimony under Fed. R. Evid. 702 because his appraisal values non-compensable lost profits, misapplies the income approach methodology, and utilizes unsupported and speculative data. Defendants oppose the motion, responding that neither Dr. Albert nor Plaintiff's experts have identified any properties comparable to the geothermal mineral estate underlying the Baca Ranch and the income approach to valuing the geothermal mineral estate is appropriate under federal law.

The landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony under Rule 702. The trial court acts as a 'gatekeeper' to exclude expert testimony that is irrelevant or does not

7

result from the application of reliable methodologies or theories to the facts of the case. *Id.,* 509 U.S. at 589-92.  In *Daubert*, the Supreme Court set forth a non-exclusive list of factors that district courts may use in evaluating expert testimony. *Id.*, 509 U.S. at 593-94.  The Court later emphasized that the *Daubert* inquiry is "a flexible one" and that the analysis will depend on the nature of the issue, the witness' expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The Court also explained that the principles of Daubert apply not only to scientific testimony, but to all expert testimony. *Kumho Tire*, 526 U.S. at 149.

Rule 702 provides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, the trial court must conduct a two-part analysis: first, the court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception, rather than the rule.  *See* Fed. R. Evid. 702 advisory committee notes.

To qualify as an expert, the expert must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).   Plaintiff does not challenge the qualifications of Dr. Albert; instead, Plaintiff takes issue with Dr. Albert's conclusions.

*Daubert* instructs, "[t]he focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594. In examining Dr. Albert's valuation testimony, the focus must remain on the soundness of Dr. Albert's methodology, and not on the conclusions derived therefrom.

In the absence of comparable land or mineral interest sales, it is appropriate to use the net income approach to estimate the profit a mineral interest could yield over a period of time. *819.98 Acres*, 78 F.3d at 1471; U*nited States v. 2,560 Acres of Land*, 836 F.2d 498, 504 (10th Cir. 1988); *United States v. 179.26 Acres of Land*, 644 F.2d 367, 367 (10th Cir. 1981). In this case, Dr. Albert has utilized the net income approach to valuing Defendants' condemned geothermal mineral interests. Simply put, Dr. Albert's methodology is consistent with that endorsed by the Tenth Circuit.

The court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony. Advisory Committee note to Rule 702 instructive in this regard:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*See also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) (holding that jury was entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate). The Advisory Committee note further counsels that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." As the Supreme Court stated in *Daubert*: "Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Dr. Albert's opinion is not rendered inadmissible simply because it is based on Defendants' version of the contested facts. Plaintiff will have ample opportunity to rebut Dr. Albert's valuation theories during cross-examination. Indeed, Plaintiff will likely also present its competing valuation theories through the testimony of its own expert witnesses, who have based their opinion testimony on Plaintiff's version of the disputed facts.

After carefully reviewing Dr. Albert's reports, the Court is satisfied that his methodology rests on a reliable foundation and will assist the commission in deciding the property valuation issue. Simply put, in exercising its function as gatekeeper, the Court has determined that the proffered opinion of Dr. Albert satisfies the requirements of *Daubert*. Plaintiff's Motion to Exclude the Valuation Testimony of Mitchell Albert will be denied.

### C.     Defendants' Opposed Second Motion for Preliminary Legal Determinations.

Defendants' motion asks the Court to adjudge that (1) where property is jointly owned by private (non-governmental) parties creating a cotenancy, each cotenant is entitled to possession of the whole without having to get permission or approval of any other cotenant; (2) where the mineral interest is severed from the surface estate, the severed mineral estate constitutes a separate estate, which includes the rights to: a) explore for, develop, produce, sever and sell the minerals located in and under the land; and b) ingress and egress and reasonable use of the surface estate to conduct mineral operations; and (3) GeoProducts of New Mexico, as the lessee under the geothermal leases issued to it, owned a fee simple determinable interest in real property covered by those leases, and the lessors owned a royalty interest reserved.

Defendants contest assumptions that Plaintiff's expert, John Widdoss, relied upon in his

report. In essence, Defendants invite this Court to discredit the methodology on which Mr. Widoss relied in reaching his conclusions. The Court declines to do so. The report and opinions of Mr. Widoss will be subjected to cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 595. The applicable law will be contained in the Court's instructions to the commissioners, as contemplated in the Stipulated Order for Referral to Commission. (Doc. 128.) Defendants' Motion for Preliminary Legal Determinations will be denied.

**IV.     Conclusion.**

For all the forgoing reasons, the motions are denied, as stated herein.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**