IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                                                                          **No. CIV 06-0933 RB/RHS**

**99,223.7238 ACRES OF LAND, more or less, in**
**SANDOVAL and RIO ARRIBA COUNTIES,**
**NEW MEXICO, and J.B. HARRELL, JR., et al.**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Fee[1] Defendants' Motion for Fees and Expenses Pursuant to the Equal Access to Justice Act (Doc. 231), filed on March 15, 2010. Jurisdiction arises under 28 U.S.C. § 1358. Having considered the submissions, record, and relevant law, the motion is denied.

**I.   Background.**

The Government brought this eminent domain proceeding regarding Defendants' 12.5 percent undivided mineral interest underlying the Valles Caldera National Preserve, formerly known as the Baca Ranch, in the Jemez Mountains of New Mexico. This 12.5 percent undivided mineral interest includes leases of the geothermal minerals and for geothermal energy development held by Defendant GeoProducts of New Mexico, Inc. (GeoProducts). Additionally, this action concerns a 1.25 percent undivided mineral interest owned by Defendant Edward "Bubba" Spears underlying 3,096 acres previously purchased by the Government for inclusion in the Bandelier National Monument. The stipulated date of taking was May 21, 2006. On October 2, 2006, the Government filed the instant

---

[1] The Fee Defendants are Ronald J. Harrell and Debbie Harrell Evans, Co-executors of the Estate of Joab B. Harrell, Jr., deceased and the Estate of Marie S. Harrell, Don and Maryana Harrell, Melissa Leigh Harrell, Jack Gullahorn, Claire Meador, George Thompson III, Betty Thompson, Edward D. (Bubba) Spears, Jr., and Lois Spears. Defendant GeoProducts holds lease interests and is not included as a Fee Defendant.

action and deposited $700,000 with the Clerk of the Court as the amount it claimed constituted just compensation.

On June 3, 2008, the parties agreed to appoint a three-member commission to value Defendants' interest pursuant to Fed. R. Civ. P. 71.1 (h). A Stipulated Order for Referral to Land Commission was issued on June 19, 2008.

The Commission held proceedings regarding valuation on March 2-5, 2009, during which Ken Boren, Subir Sanyal, Ph.D, William F. Jennings, and Mitchell E. Albert, Ph.D. testified on behalf of Defendants. Specifically as to valuation, Mr. Jennings testified that the value of the 1.25 percent mineral interest in the Bandelier acreage was $968, and the value of the 12.5 percent Baca Ranch hard rock mineral estate was $968,253. (Tr. of March 2, 2009 at 232.) As to the 12.5 percent Baca Ranch geothermal interest, Dr. Albert testified that the royalty interest was $8,900,000, the value of the leasehold interest was between $9,850,000 and $20,800,000, for a total value of $18,750,000 to $29,700,000. (Tr. of March 3, 2009 at 39-40.)

At the proceedings before the Commission, John D. Dorchester, James Hodos, Paul Brophy, and John Widdoss testified on behalf of the United States. Specifically as to valuation, Mr. Widdoss testified that the value of the 12.5 percent mineral interest in the Baca Ranch was $186,000. (Tr. of March 4, 2009 at 29.)

On March 18, 2009, the Commission set the fair market value of Defendants' 12.5 percent mineral interest in the Baca Ranch at $6,100,000, including the geothermal leases held by GeoProducts. The Commission valued the 1.25 percent Bandelier mineral estate at $800. Defendants filed a motion to adopt the Commissioners' Findings. The Government filed objections to the Commissioners' Findings.

Defendants filed a motion to sanction the Government for disclosing the Van Court Supplemental Appraisal, (VCSA), on February 26, 2009, which was four days before the proceedings

before the Commission. The VCSA was prepared on January 18, 2000, and valued a portion of the Baca Ranch purchased by Santa Clara Pueblo and two restrictive easements. On March 18, 2009, Defendants' Second Motion for Sanctions was referred to the assigned United States Magistrate Judge, the Honorable Robert H. Scott. On April 9, 2009, Judge Scott held a hearing and issued his Report and Recommendation in which he recommended that the motion be denied based on waiver. Defendants filed objections to the Report and Recommendation.

On July 8, 2009, the Court issued an order providing that a hearing on the issues of just compensation and the appropriateness of sanctions would be set in October 2009, and requiring the parties to file summaries of evidentiary support for their positions. On September 28, 2009, the Government and Defendants filed separate summaries of evidentiary support. The Court held the hearing on October 13, 2009.

At the hearing of October 13, 2009, Dr. Albert testified on behalf of Defendants that the VCSA increased the value of the Baca Ranch geothermal royalty interest from $8,900,000 to $9,600,000, the value of the geothermal leasehold interest from $9,850,000-$20,800,000 to $11,300,000-$23,400,000, which increased the total value range from $18,750,000 -$29,700,000 to $20,200,000- $33,000,000 for the geothermal portion of the 12.5 percent Baca Ranch mineral interest. (Tr. of Oct. 13, 2009 at 9.) Mr. Widdoss testified on behalf of the Government that the value of the 12.5 percent Baca Ranch mineral estate was $186,000; and the value of the 1.25 percent Bandelier mineral interest was $500. (Tr. of Oct. 13, 2009 at 35-36.)

On December 14, 2009, having considered de novo the record of the proceedings before the Commission and all exhibits submitted by counsel, and having considered the record and the exhibits submitted by counsel at the hearing of October 13, 2009, the Court determined that, as of May 21, 2006, the fair market value of Defendants' undivided 12.5 percent mineral interest in the Baca Ranch, including the leases of the geothermal minerals and for geothermal energy development held by

Defendant GeoProducts, had a fair market value of $3,800,000; and the 1.25 percent Bandelier mineral estate had a fair market value of $968.  Additionally, the Court awarded $50,000 as sanctions in favor of Defendants and against the Government, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C).  No appeal was filed.

On March 15, 2010, the Fee Defendants filed their motion for attorney fees, contending that they are the prevailing party within the meaning of the Equal Access to Justice Act (EAJA), the Government's valuation was not substantially justified, and they are entitled to recover $2,022,321.91 in attorneys' fees and expenses.

## II.     Discussion.

The EAJA authorizes the award of attorney fees and other expenses to "the prevailing party" in a civil action brought by or against the United States.  28 U.S.C. § 2412(d)(1)(A).

For eminent domain proceedings, the EAJA expressly defines the "prevailing party" as follows:

> "[P]revailing party" . . . means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government[.]

28 U.S.C. § 2412(d)(2)(H).

In order to qualify as the prevailing party, the Fee Defendants must show that the highest valuation attested to at trial on behalf of the property owners is closer to the final judgment of $3,800,968 than is the $186,500 valuation attested to at trial on behalf of the Government.  *See United States v. 1002.35 Acres of Land*, 942 F.2d 733, 735 (10th Cir. 1991).  It bears underscoring that  the only relevant values are those values testified to in court.  *See* 28 U.S.C. § 2412(d)(2)(H);  H.R. Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 147.  In determining prevailing party status, settlement negotiations or agreements are wholly irrelevant.

4

H.R. Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 147.  Similarly, the arguments of counsel and the positions of the parties have no relevance, unless they are supported by testimony in court.

The highest valuation of the property attested to at the proceedings before the Commission on behalf of the property owners was $30,669,221.  At the proceedings before the Court, Dr. Albert testified that the VCSA increased the highest value of the interest to $33,000,000.

Mr. Widdoss testified on behalf of the Government that the value of the 12.5 percent mineral interest underlying the Baca Ranch was $186,000, and the highest value of the 1.25 Bandelier mineral interest was $500.  Thus, the highest valuation of the property involved that was attested to at trial on behalf of the Government was $186,500.

The amount of the final judgment was $3,800,968.  The difference between $33,000,000 and $3,800,968 is $29,199,032.  The difference between $3,800,968 and $186,500 is $3,614,468.  The highest valuation attested to at the hearing on behalf of the Government was closer to the final judgment than the highest valuation attested to at the hearing on behalf of the property owners.  For this reason, the property owners do not qualify as the prevailing party for purposes of 28 U.S.C. § 2412(d)(2)(H).

The Fee Defendants offer several contentions to the contrary, all of which are negated by the plain language of the statute, the legislative history, and the record.  First, the Fee Defendants rely on the Commission's $6,100,800[2] valuation, rather than the final judgment, as their point of comparison. (Doc. 231 at 6.)  This is inconsistent with the plain meaning of the statute, which defines "prevailing party" in terms of a "final judgment." 28 U.S.C. § 2412(d)(2)(H) ("'prevailing party' . . . means a party

---

[2] Interestingly, $6,100,000 was not a figure "attested to" before the Commission.  The Court was compelled to hear additional testimony regarding value for precisely the reason that the path taken by the Commission to arrive at $6,100,000 was not readily apparent from the record before the Commission.

5

who obtains a final judgment . . . "). Thus, the statute sets the comparison point as the $3,800,968 final judgment, and not the Commission's $6,100,800 valuation.

Second, the Fee Defendants assert that they did not put on any evidence of value at the hearing of October 13, 2009, but instead adopted the Commissioners' Findings of $6,100,000. (Doc. 231 at 7.) This statement is belied by the transcript of the hearing, wherein Dr. Albert testified not only as to the value of the geothermal interest, but that such value was increased by the VCSA. (Tr. of Oct. 13, 2009 at 9-10.) While Defendants filed a Motion to Adopt the Special Commission's Report before the Court decided to hold the de novo hearing, Defendants presented no testimony that the value of the interest was $6,100,000. On the contrary, at the October 13, 2009, hearing before the Court, Dr. Albert testified that the VCSA increased the value of the interest to $33,000,000.

Third, the Fee Defendants contend that the valuation testimony of Dr. Albert concerning the interest of GeoProducts should be excluded from the EAJA analysis. (Doc. 231 at 5; Doc. 239 at 3.) This contention conflicts with the plain meaning and the intent of § 2412(d)(2)(H). "When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006) (quotations omitted). Section 2412(d)(2)(H) sets the reference value at "the highest valuation of the property involved that is attested to at trial on behalf of the property owner . . ." 28 U.S.C. § 2412(d)(2)(H). Simply put, this language clearly encompasses the entire property involved. Thus, the plain language of the statute forecloses the Fee Defendants' attempt to excise from the record Dr. Albert's testimony about the leasehold interest.

This conclusion is backed by the legislative history of § 2412(d)(2)(H), which illustrates that Congress intended for the property valuation relied upon at trial to be considered as a whole in the prevailing-party analysis. The Report of the House Committee on the Judiciary explains that Congress added 28 U.S.C. § 2412(d)(2)(H) to the EAJA in 1985 with the hope of "bringing the Government and

the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under the [EAJA]." H.R. Rep. No. 120(I), 99th Cong. 1st Sess. (1985), *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 147.  Notably, the definition of a prevailing party contained in § 2412(d)(2)(H) was intended to encourage parties to refrain from presenting high and low-ball testimony at trial. This legislative intent would be undermined if the Fee Defendants were allowed to split their valuation for purposes of determining prevailing-party status.

Additionally, throughout this litigation, all Defendants were represented by the same counsel and relied on the same witnesses. Allowing the Fee Defendants to jettison their alliance and rewrite the record would be unjust. For these reasons, the Court has looked to the testimony regarding the entire property in order to determine "the highest valuation of the property involved that is attested to at trial on behalf of the property owner . . ." 28 U.S.C. § 2412(d)(2)(H). The highest valuation attested to on behalf of the Government was closer to the final judgment than the highest valuation attested to on behalf of the property owners. According to the "unambiguous terms of the statute," the Fee Defendants are not the prevailing party within the meaning of the EAJA. *United States v. 1002.35 Acres of Land*, 942 F.2d at 736. In that the Fee Defendants are not the prevailing party, the motion must be denied.

The Court recognizes the tension imposed on landowners by § 2412(d)(2)(H). In land condemnation cases, landowners have an incentive to present the very highest supportable valuation testimony in order to maximize awards of just compensation. At the same time, § 2412(d)(2)(H) compels a more modest approach to present lower valuation testimony in order to qualify as a prevailing party for purposes of obtaining attorney fees under the EAJA. This inherent conflict is aptly illustrated by the situation at hand. In presenting Dr. Albert's valuation testimony, Defendants were

"hoisted on their own petard"[3] and took themselves out of contention for attorney fees under the EAJA.

In that the Fee Defendants are not the prevailing party within the meaning of § 2412(d)(2)(H), it is unnecessary for the Court to assess whether the Government's position was substantially justified. If the Court were to engage in such an analysis, the result might not favor the Government. By presenting testimony that the value of the interest was no more than $186,500, the Government low-balled the amount every bit as much as the Defendants inflated it. As a result, the process was undermined to the detriment of everyone involved.

**III.    Conclusion.**

It is regrettable that Defendants expended over $2 million in fees and costs to obtain a judgment of $3.8 million. However, Defendants are not the prevailing party within the meaning of 28 U.S.C. § 2412(d)(2)(H). For this reason, the Fee Defendants are not entitled to an award of fees and expenses under the EAJA.

**THEREFORE,**

**IT IS ORDERED** that the Fee Defendants' Motion for Fees and Expenses Pursuant to the Equal Access to Justice Act (Doc. 231), filed on March 15, 2010, is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

---

[3] From Shakespeare's Hamlet. The notion being that we are sometimes wounded by the very same mechanism we used to wound our opponent. *See* William Shakespeare, *Hamlet*, act 3, sc. 4.